UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOUTH MACOMB DISPOSAL AUTHORITY,

        Plaintiff,

vs.

Case No. 11-cv-12715
HON. GERSHWIN A. DRAIN

MODEL DEVELOPMENT, LLC, *et al.*,

        Defendants.

## ORDER GRANTING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS [#46] AND GRANTING DEFENDANTS' MOTION TO COMPEL [#61] AND CANCELLING FEBRUARY 19, 2013 HEARING

### I.   INTRODUCTION

On September 28, 2012, Plaintiff, South Macomb Disposal Authority, filed its First Amended Complaint alleging that Defendants, Model Development, LLC, Model Development, Ltd., Pollution Risk Services, LLC, Petro Environmental Technologies, Inc., Assured Administration, LLC, and Cincinnati Capital Partners 109, LLC (collectively "Defendants"), are liable to Plaintiff for costs of remediation for Sites 9 and 9A (the "Site") located in Macomb County, Michigan.

On October 31, 2012, Defendants filed an Answer to the First Amended Complaint, as well as filed a Third-Party Complaint against Endurance American Specialty Insurance Company ("Endurance") claiming that Endurance is liable to Defendants pursuant to policies of insurance requiring Endurance to defend and indemnify Defendants in this action, however Endurance has failed to comply with its contractual obligations.

Presently before the Court are the following motions: (1) Endurance's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5) and/or 12(b)(6), Motion to Strike Pursuant to Fed. R. Civ. P. 14(a)(4), and/or Motion to Sever Pursuant to Fed. R. Civ. P. 14(a)(4), filed on November 26, 2012, and (2) Defendants' Motion to Compel Plaintiff to Answer Discovery Requests, filed on February 7, 2013. A hearing on these matters was scheduled to occur on February 19, 2013. However, the Court concludes that oral argument will not aid in the resolution of the pending motions. Thus, these matters will be resolved on the briefs pursuant to E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court grants Endurance's Motion to Dismiss and grants Defendants' Motion to Compel Plaintiff to Answer Discovery.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an authority created under the laws of Michigan for the purpose of disposing of solid waste from each of its five member cities, which include Eastpointe, Center Line, Warren, Roseville, and St. Clair Shores. Plaintiff controls and operates landfills in Macomb County including the Site, which is located in Macomb Township, Michigan. In April of 1991, Judge Balkwill of the Macomb County Circuit Court ordered Plaintiff to perform remedial action for the Site.

In July of 1999, Plaintiff settled with the State of Michigan on a remediation plan for the Site with the understanding that a Consent Decree would be entered with and approved by the Court. On September 22, 2000, Plaintiff and Defendants entered into an Environmental Indemnification and Insurance Agreement (the "Contract") with the understanding that Defendants would clean up the Site consistent with the Consent Decree and approval of the State of Michigan and would forever be responsible for any and all costs, expenses, damages and claims relative to the Site. *See* First

Am. Compl., Ex. A. Under the Contract, Defendants agreed "to undertake to remediate [the Site] operated by SMDA such that the [Site] will be removed from the National Priorities List and otherwise fully comply with all applicable environmental laws, and SMDA agree[d] to pay [Defendants] the amounts set forth herein to undertake such obligation." *Id.* at 2. The Contract required Defendants to remediate the Site with certain timing guidelines and completely remediate the Site within four years.

Additionally, the Contract required Defendants to purchase insurance for the remediation work with a policy limit of $30,000,000.00 and for a period of 30 years at a cost to Plaintiff of a premium of $15,910,000.00. Defendants purchased policies of insurance, including policies of insurance from Endurance. Specifically, Defendants were insured by Endurance under Policy Number ECC101009968-00, with a policy period covering February 28, 2010 through February 28, 2011, and under Policy Number ECC10100968-01, with a policy period covering February 28, 2011 through February 28, 2012 (the "Endurance Policies"). The Endurance Policies state in relevant part that Endurance has "the right to and duty to defend, at [its] expense, any claim, proceeding or "suit" against [Defendants] for damages payable by this insurance. [Endurance] ha[s] the right to investigate and settle these claims, proceedings and "suits." *See* Third-Party Compl., Ex. 1 at 106.

In mid-January of 2011, Plaintiff discovered that Defendants had abandoned the remediation project, as well as partially dismantled the current operating remedial system on the Site forcing Plaintiff to hire another contractor to reassemble and restart the existing operating system.

Plaintiff filed its original complaint on June 22, 2011, against Defendants Model Development, LLC, Petro Environmental Technologies, Inc., and Assured Administration, LLC. On July 11, 2012, or more than a year after the filing of the original complaint, Plaintiff filed a Motion for Leave to File First Amended Complaint. *See* Dkt. No. 23. Plaintiff sought leave in

order to add "necessary Defendants" Model Development, Ltd., Pollution Risk Services, LLC and Cincinnati Capital Partners 109, LLC based on information learned during the May 30, 2012, deposition of Mark Mather, Defendants' principal and owner. *Id*. at 2.

Prior to ruling on Plaintiff's Motion for Leave to File First-Amended Complaint, on July 20, 2012, Defendants filed a Motion for Leave to Amend their Answer and implead Third-Party Defendants American International Specialty Lines Insurance Company ("AIG") and Endurance claiming that both AIG and Endurance issued policies to Defendants and are obliged to defend and indemnify Defendants pursuant to these policies.

On August 30, 2012, the Court granted Plaintiff's Motion for Leave to File First Amended Complaint and found as moot Defendants' Motion for Leave to Amend Answer to implead Third-Party Defendants. *See* Dkt. No. 28.

On September 28, 2012, Plaintiff filed its First Amended Complaint which raised the same claims as the original complaint and added Model Development Ltd., Pollution Risk Services, LLC and Cincinnati Capital Partners 109, LLC as Defendants. Plaintiff's First Amended Complaint alleges that Defendants are liable for the costs of remediation on the Site, as well as other additional damages incident to this failure to remediate pursuant to the Contract. Plaintiff's First Amended Complaint raises the following claims: Negligence and Professional Malpractice, Count I; Breach of Contract for Failure to Remediate Site, Count II; Breach of Contract for Failure to Include Plaintiff as "First Named Insured, Count III; Indemnity, Count IV; Fraud and Misrepresentation, Count V; and Conversion, Count VI.

On October 1, 2012, this case was reassigned to the undersigned. *See* Dkt. No. 32. The Court conducted a status conference on October 22, 2012. At the status conference, Defendants

indicated that they believed Endurance[1] was required to defend them in this matter, as well as were required to indemnify Defendants if they were found liable to Plaintiff. The Court, in an effort to expedite this matter in light of the seemingly slow pace of these proceedings, permitted Defendants to file a Third-Party Complaint against Endurance without requiring Defendants to file a Motion for Leave to Implead Third-Party Defendants. The Court also advised the parties that it would not further adjourn the scheduling dates ordered by Judge Julian Abele Cook, the Judge formerly assigned to this matter, as the parties had already been provided an extension of the scheduling order dates. Rather, the Court determined that once the Third-Party Complaint had been filed and served, the parties should appear for another status conference to ascertain the need for a further extension to the scheduling order dates. On the same day as the status conference, the Court entered an Order Establishing Deadlines for Filing Responsive Pleading and Third Party Complaint, which ordered Defendants to file and serve a Third-Party Complaint no later than October 31, 2012. *See* Dkt. No. 39.

Defendants filed their Answer to the First Amended Complaint and their Third-Party Complaint against Endurance on October 31, 2012. However, Endurance was not served with the Third-Party Complaint until November 5, 2012. On November 26, 2012, Endurance filed its Motion to Dismiss the Third-Party Complaint. The Court set the hearing on Endurance's Motion to Dismiss the Third-Party Complaint for February 19, 2013, cancelled the status conference set for December 11, 2012, and reset the conference to occur on February 19, 2013, after the hearing on Endurance's Motion to Dismiss Third-Party Complaint.

---

[1] It is unclear why Defendants did not also seek to file a Third-Party Complaint against AIG as well, since Defendants claimed in their Motion for Leave to Amend and Implead Third Parties that AIG also had a policy of insurance with Defendants arising out of the subject matter of these proceedings.

Thereafter, Plaintiff filed a Motion to Amend Scheduling Order claiming that "[d]ue to the addition of three new Defendants as well as a Third-Party Defendant, the parties need more time for discovery. To date, only one deposition has been taken, that of Defendants's owner/principal, Mark Mather. This deposition was not fully completed." *See* Dkt. No. 53 at 5. The Court granted this motion on December 21, 2012. Thus, the current scheduling dates in this matter include a discovery cut off date of March 19, 2013, a dispositive motion cut off date of June 21, 2013 and a trial date of October 15, 2013. The Court's December 21, 2012 Order Granting Plaintiff's Motion to Amend Scheduling Order advised the parties that "there will be no further extensions to the scheduling order in this matter." *See* Dkt. No. 55 at 2.

### III. LAW & ANALYSIS

#### A. Endurance's Motion to Dismiss

Endurance argues that the Third-Party Complaint should be dismissed under Rule 12(b)(5) and 12(b)(6) because it is untimely, as well as because Endurance is a liability insurer, therefore applicable law prohibits it from being made a party to the same action in which the liability of its insureds is to be determined. Alternatively, Endurance maintains that the Third-Party Complaint should be stricken requiring Defendants to file a separate action or severed from this action pursuant to Federal Rule of Civil Procedure 14(a)(4).

This Court must first determine whether Endurance is a proper third-party defendant under Rule 14 of the Federal Rules of Civil Procedure. Rule 14 states "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). This allows "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *American Zurich*

*Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). "A defendant attempting to transfer the liability asserted against him by the original plaintiff to the to the third-party defendant is [] the essential criterion of a third-party claim." *Id.* Rule 14 seeks "to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him." *Id.* (citing Wright, Miller, Kane, Fed. Prac. & Proc.: Civ. 2d § 1441 at 289-90 (2d ed. 1990)). "The third-party complaint is in the nature of an indemnity or contribution claim." *Id.*

Rule 14(a) permits the filing of a third party complaint as a matter of right, within fourteen days after serving its original answer to the complaint. *See* Fed. R. Civ. P. 14(a)(1). Thereafter, a defendant must obtain leave of court. *Id.* The discretion to grant a motion for leave to implead third parties rests with the discretion of the court and timeliness is an important factor. *See Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 933 F. Supp. 675, 686 (E.D. Mich. 1996); *see also Diar v. Genesco, Inc.*, 102 F.R.D. 288, 289 (N.D. Ohio 1984). Rule 14(a)(4) states that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4).

Whether to allow impleader of third parties involves consideration of competing interests, such as the need to avoid duplicative litigation versus ensuring that the parties already before the Court receive reasonably expeditious adjudication. *Diar*, 102 F.R.D. at 289. It is not an abuse of discretion to deny impleader where it will disadvantage the existing action. *See Southwest Admrs., Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986).

As an initial matter, there appears to be some disagreement concerning the law that applies in the third party action. In the Third-Party Complaint, Defendants claim that "[t]he Endurance Policies are governed by Ohio Law." *See* Third-Party Compl., ¶ 15. However, both parties argue

their respective positions are correct under either Michigan or Ohio law. This is a diversity action, therefore the Court must apply the substantive law of the forum state, including the choice of law rules of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

The contract at issue does not contain a choice of law provision. In the absence of a binding choice of law provision in a contract, this Court must apply Michigan's choice of law rules, "unless a rational reason for doing otherwise exists." *Hall v. GMC*, 229 Mich. App. 580, 582 (1998). Michigan courts have adopted the choice of law formula set forth in the Restatement (Second) of Conflict of Laws to guide courts in making this determination. *See Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 739 (6th Cir. 1999).

When the parties to a contract have not included a choice of law provision, Section 188 of the Restatement provides that the following factors should be considered in determining the applicable law: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the places of incorporation and business of the parties. *Restatement 2d of Conflicts of Laws* § 188(2). Furthermore, "if the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Restatement 2d of Conflict of Laws* § 188(3). The parties do not address the Restatement's factors in their briefing, however it appears that Ohio law governs the third party action as all of the Defendants, as well as Endurance are Ohio entities and the place of negotiation occurred in Ohio.

The Supreme Court has held that federal courts sitting in diversity must adhere to the Federal Rules of Civil Procedure when sitting in diversity actions. *See Hanna v. Plumer*, 380 U.S. 460 (1965). If an issue is covered by the Federal Rules of Civil Procedure, the federal rule must be

applied by the federal court sitting in diversity regardless of contrary state law. *Id*. at 471. Therefore, pursuant to *Hanna*, a federal court sitting in diversity first must determine whether a Federal Rule directly "collides" with the state law sought to be applied. *Id*. In the event such a conflict exists, the Federal Rule applies if it is constitutional and within the scope of the Rules Enabling Act. *See Gasperini v. Centers for Humanities, Inc.*, 518 U.S. 415, 427 n. 7 (1996). In order to determine whether a Federal Rule "collides" with state law, a federal court must consider whether the scope of the Federal Rule is "sufficiently broad to control the issue" before the court, *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980), "thereby leaving no room for operation of the [state] law." *Burlington Northern R.R. v. Woods*, 480 U.S. 1, 4-5 (1987). Additionally, "[f]ederal courts have interpreted the Federal Rules [] with sensitivity to important state interests and regulatory policies." *Gasperini*, 518 U.S. at 427.

Turning to Endurance's central argument that the applicable states's laws preclude this third party action, the Court finds that neither of the statutes relied upon by Endurance are applicable here, therefore the Court need not analyze whether these laws "collide" with Federal Rule of Civil Procedure 14. As to Endurance's argument that Michigan law precludes an insurer from being made a party to the original action against its insured, whether as a defendant or third-party, such an argument is wholly lacking in merit. Relying on Michigan Compiled Law § 500.3030, Endurance argues that as a liability insurance carrier, it cannot be made a party to the same action in which the liability of its insured is to be, but has not yet been determined. Specifically, § 500.3030 states:

> In the original action brought by the injured person, or his or her personal representative in case death results from the accident, as mentioned in section 3006, the insurer shall not be made or joined as a party defendant, nor, except as otherwise provided by law, shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial.

MICH. COMP. LAWS § 500.3030.

Endurance claims that Michigan federal courts enforce § 500.3030's prohibition against including insurers in actions filed by injured parties against tortfeasor insureds. However, the cases relied on by Endurance are distinguishable. In *Bray v. Unified Prop. Group, LLC v. Fireman's Fund Ins. Co.*, No. 12-12618, 2012 U.S. Dist. LEXIS 156892 (E.D. Mich. Oct. 30, 2012), the plaintiff sued an apartment complex where she lived due to injuries her daughter sustained due to a defective stove. *Bray*, 2012 U.S. Dist. LEXIS 156892, *at 1. The *Bray* plaintiff also directly sued the apartment complex's insurance company for failure to preserve the stove so that it could be examined. *Bray*, 2012 U.S. Dist. LEXIS 156892, *at 1-2. The district court granted the insurance company's motion to dismiss because the plaintiff failed to state negligence, fraud, conspiracy, or negligent infliction of emotional distress claims relative to the insurance company's failure to preserve the stove for inspection. *Bray*, 2012 U.S. Dist. LEXIS 156892, *at 13-15, 18-19, 20-23.

The *Bray* court noted, in addressing the plaintiff's spoilation claim, that the plaintiff did not have an indepedent claim against the insurance company arising from the defective stove, rather her claim rested solely upon the company's failure to preserve evidence. *Bray*, 2012 U.S. Dist. LEXIS 156892, *at 10 ("[T]he plaintiff never had an independent claim against Fireman's Fund for the carbon monoxide exposure. Fireman's Fund was only the insurer for one of the tortfeasors. Michigan law does not permit a direct action against an insurer under those circumstances. *See* MICH. COMP. LAWS § 500.3030.") Thus, the *Bray* court was not presented with the issue herein, whether Rule 14 permits Defendants to file a Third-Party Complaint against its insurance carrier. *Bray* was addressing Michigan's prohibition against a plaintiff filing a direct action against an insurance carrier, and not a defendant's right to file a third party action against its insurance carrier for failure to defend and indemnify.

Similarly, in *Badger Mut. Ins. Co. v. Ross Enters.*, No. 08-14223, 2009 U.S. Dist. LEXIS

-10-

9800 (E.D. Mich. Jan. 26, 2009), the Court noted that the insurance company's efforts to intervene in an underlying state court action as a party defendant "was a fool's errand, since it is well established that Michigan law does not permit a direct action by a third party against an insurer of a tortfeasor." *Badger*, 2009 U.S. Dist. LEXIS 9800, * at 15-16. *Badger*, like *Bray*, did not involve a defendant's third party complaint against its insurer. Endurance has failed to demonstrate that MICH. COMP. LAWS § 500.3030 is applicable under the circumstances here.

In the event that Ohio law applies, Endurance maintains that Ohio law also prohibits an insurance carrier from being made a party to the same action in which the liability of its insured is to be determined. Endurance relies on Ohio Revised Code § 3929.06, however this statute is likewise inapplicable here. Section 3929.06 concerns satisfaction of judgments and the rights of a judgment creditor of an insured tortfeasor. Endurance provides no case law in support of its contention that Ohio law prohibits a defendant from filing a third party complaint against its insurance carrier when that carrier refuses to indemnify and defend its insured.

Endurance is simply incorrect in contending that Michigan and Ohio law prohibit maintaining this third party action. The Court notes that one of the leading treatises on the Federal Rules of Civil Procedures states:

> When the insurer disclaims liability and refuses to defend on behalf of the insured, the federal courts uniformly recognize the propriety of impleader. These decisions have been supported by numerous commentators, including Judge Charles E. Clark, the principal draftsman of the federal rules. However, a few federal district courts have refused to allow impleader under these circumstances as a matter of discretion. They have noted that in the cases before them little would be gained by way of economy from the joinder of the insurer, and that impleader might well be prejudicial to the original action by causing additional delay and confusion if the unrelated matters were litigated together. Rather than refusing impleader, however, the better approach might be to allow impleader as a matter of course in this situation and then, with an eye toward effective judicial administration and fairness to the parties, to determine later whether a severance or separate trials should be ordered as is expressly authorized by Rule 14(a)(4).

6 Charles Alan Wright *et al.*, Federal Practice & Procedure § 1449 (3d ed. 2010).

Thus, the Court finds that impleader is not prohibited under either Michigan Compiled Laws § 500.3030 or Ohio Revised Code § 3929.06. However, the Court concludes that dismissing the Third-Party Complaint is nonetheless warranted based on the circumstances and procedural posture of this action.

The Court finds persuasive Endurance's argument that the Third-Party Complaint should be dismissed because it was served in violation of this Court's October 22, 2012 Order requiring Defendants to "file <u>and serve</u> a Third-Party Complaint no later than October 31, 2012." *See* Dkt. No. 39 (emphasis in original). Defendants did not serve Endurance with the Third-Party Complaint until November 5, 2012. Relying on Rule 4(m) of the Federal Rules of Civil Procedure, Endurance argues that the Third-Amended Complaint should be dismissed because Defendants failed to file and serve the Third-Amended Complaint by the deadline set forth in this Court's October 31, 2012 Order. Rule 4(m) applies to the time limit for service of the complaint, and states in relevant part: "If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

As Endurance correctly states, there is no time limit set forth in the Federal Rules of Civil Procedure for service of a Third-Party Complaint, however Defendants did not comply with this Court's directive to serve Endurance by October 31, 2012. This Court expressly informed the parties at the October 22, 2012 status conference that it was concerned with the age of this matter and reluctant to permit additional extensions to the scheduling order, yet Defendants failed to serve their Third-Party Complaint by the deadline set by this Court's October 22, 2012 Order.

Furthermore, the third party action will not serve the purpose behind Rule 14 which is to render complete justice in the most efficient means possible. This matter is nearly two years old and has already required two extensions to the scheduling dates. Granting impleader at this late stage will require further adjournments to the discovery deadline and trial date. Further, the underlying dispute between Plaintiff and Defendants will require application of Michigan law to Plaintiff's breach of contract, negligence, fraud, misrepresentation and conversion claims. The third party action will complicate these proceedings by injecting issues of the duty to defend and indemnity that likely will be governed by Ohio law. The Court is reluctant to interject more complication into this matter in light of the apparent difficulty the parties have had thus far in efficiently engaging in the discovery process. As Plaintiff notes in its Response to Defendants' Motion to Compel, the underlying dispute involves voluminous documentation covering alleged damages incurred over a ten year period, necessitating Plaintiff's need for additional time to respond to Defendants' discovery requests. *See* Plf.'s Resp. at 6. Thus, granting impleader will only serve to complicate and lengthen the resolution of the matter already before the Court and will prevent the parties from receiving a reasonably expeditious adjudication. *See Diar,* 102 F.R.D. at 289; *Southwest Admrs.*, 791 F.2d at 777. The Court dismisses the Third-Party Complaint from this action.

**B.** **Defendants' Motion to Compel Plaintiff to Answer Discovery**

On November 16, 2012, Defendants served their First Set of Interrogatories and Second Request for Production of Documents on Plaintiff. To date, the discovery has yet to be answered. The discovery deadline is March 19, 2013, yet Defendants have not received any documentation concerning Plaintiff's claimed damages.

Plaintiff filed a response to Defendants' Motion to Compel arguing that its damages are extensive and ongoing relative to the remediation efforts at issue herein. Thus, voluminous

-13-

documentation exists, and while Plaintiff has diligently worked on assembling the requested information, it still requires roughly two more weeks to gather all the information responsive to Defendants' discovery requests. Thus, Plaintiff asks that the Court enter an order granting Defendants' Motion to Compel with a deadline for Plaintiff to respond to be set for fourteen days from the date of the Court's Order.

## IV.    CONCLUSION

For the foregoing reasons, Endurance's Motion to Dismiss [#46] is GRANTED.

Defendants' Motion to Compel Plaintiff to Answer Discovery [#61] is GRANTED. Plaintiff shall respond to Defendants' discovery requests within fourteen days from the date of this Order.

SO ORDERED.

Dated: February 19, 2013                                /s/Gershwin A Drain
                                                          GERSHWIN A. DRAIN
                                                          U.S. DISTRICT JUDGE